**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-mj-345** |
| | : | |
| **CHRISTIAN DAVID MANDEVILLE,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of pretrial detention. Defendant Christian David Mandeville (hereinafter, "defendant") poses a serious risk of flight and should be detained pending trial pursuant to 18 U.S.C. § 3142 (f)(2)(A) of the federal bail statute. The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**I.    Procedural History**

On March 30, 2021, the government sought and obtained a complaint charging the defendant with two instances of Assault on a Foreign Official in violation of 18 U.S.C. § 112(a), Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a)(1), and Unlawful Entry of Private Property in violation of 22 D.C. Code § 3302(a)(1). The defendant is scheduled for an initial appearance on March 31, 2021 at 2:30 PM.

**II.    Legal Authority and Argument**

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."

1

18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted. *Id.*; *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *Smith*, 79 F.3d at 1210; *see also Williams*, 798 F. Supp. at 36.

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A review of the facts and circumstances in this case require the Court to conclude that the defendant is a serious risk of flight and there are no condition or combination of conditions that would assure the safety of the community and the defendant's presence at future court proceedings. Accordingly, the defendant should be held pursuant to 18 U.S.C. § 3142(f)(2).

## A.  Nature and Circumstances of the Offense Charged

The first factor to be considered, the nature and circumstances of the offense charged, weighs heavily in favor of pretrial detention. The defendant is charged with unlawfully entering the private residence of the Swiss Ambassador to the United States. The defendant is further charged with assaulting a federal officer, and embassy personnel, including the Swiss Ambassador

to the United States. The actions of the defendant disturbed not just the sanctity of a home, but also the official residence of an envoy to the United States.

On March 29, 2021 at approximately 2:06 PM, United States Secret Service Uniformed Division officers were dispatched to the residence of the Swiss Ambassador in response to reports of an unwanted guest on the premises. Embassy personnel met law enforcement upon their arrival and explained that the defendant, later identified by his Oregon identification card as Christian David Mandeville, was inside and refused to leave the premises.

Investigation later revealed that Mandeville had initially rung at the gate to the embassy grounds, but was denied entry. Mandeville then jumped a fence and entered the residence. Mandeville was stopped by an embassy employee inside the residence. The employee was seen in video standing between Mandeville and the rest of the residence. As Mandeville approached the employee, the employee put out his arms and tried to stop Mandeville. Mandeville grabbed at his wrist to push the employee away. The employee then tried to grab Mandeville, but Mandeville continued to push the employee, attempting to get around him.

When law enforcement arrived, the Ambassador conveyed his concerns that the individual would get farther inside. He also said that the individual would likely be alarmed once law enforcement entered. He then directed law enforcement to the front and side entrances of the residence. Law enforcement entered the residence with the Ambassador. Upon entering, Mandeville attempted to run farther into the building. The Ambassador put his hands out to stop Mandeville, but Mandeville used his arms to knock away the Ambassador's arms. Mandeville then used his body to try and push his way past the Ambassador. His actions pushed the Ambassador backward.

A responding Secret Service Uniformed Division officer attempted to detain the subject and push him to the ground, but he continued to pull away and fight against the officer. With additional law enforcement assistance, he was able to take Mandeville to the ground. Mandeville refused to present his hands and pulled his hands inward, reaching towards the area of his waistband. The officer sustained abrasions on his forearm from the altercation.

The Ambassador notified responding law enforcement that Mandeville had a backpack. Mandeville acknowledged that he had a bag on the other side of the fence. The backpack was declared suspicious and resulted in the temporary closure of the area around the Ambassador's residence until it was appropriately cleared. Mandeville was placed under arrest and transported to Metropolitan Police Department 2nd District for processing.

Consideration of the nature and circumstances of the offense also requires the Court to weigh the possible penalty the defendant faces upon conviction. See *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Indeed, the seriousness of the defendant's crime is reflected in the sentence he would face if convicted. Here, the defendant faces not more than three years imprisonment for each charge of Assault on a Foreign Official in violation of 18 U.S.C. § 112(a), not more than eight years imprisonment for the charge of Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a)(1), and imprisonment of not more than 180 days for the charge of Unlawful Entry in violation of 22 D.C. Code § 3302(a)(1).

**B.  Weight of the Evidence against the Defendant**

The second factor to be considered, the weight of the evidence against the defendant, is substantial and weighs in favor of detention. Surveillance footage captured the defendant's actions both outside and inside the residence of the Swiss Ambassador. Embassy staff and law enforcement directly witnessed the defendant's conduct inside the residence. The defendant was

identified by his Oregon identification card. Additionally, the defendant was previously of record with the United States Secret Service as of December 21, 2020 for similar conduct.

### C.  The Defendant's History and Characteristics

The defendant initially came to the attention of the United States Secret Service on December 21, 2020. Secret Service Uniformed Division officers were dispatched to the residence of the Swiss Ambassador following reports of a fence jumper. Embassy personnel stated that an individual jumped the fence and walked up to the front door of the residence. The individual was showing signs of mental illness but was otherwise calm. The individual was later identified as Mandeville by an Arizona ID card. Embassy personnel conveyed that Mandeville said he jumped the fence and wanted to talk to officials about his problems.

When law enforcement arrived, Mandeville was being escorted out of the residence and was subsequently detained by law enforcement. Mandeville said that he needed to talk to the FBI about UFOs and drones that are watching him and that he left Arizona because he "pissed off" a militia. Embassy personnel expressed that they did not want to press charges. Officers escorted Mandeville off the property and issued a Barring Notice, reading the notice to Mandeville and explaining to Mandeville that he was not welcome back at the location. Mandeville asked if there was a homeless shelter he could go to. Per his request, law enforcement contacted a homeless shelter that subsequently sent a van to pick up Mandeville. The defendant has no other known criminal history.

Mandeville next came to the attention of the Secret Service at the time of the instant offense on March 29, 2021, when he was again present at the residence of the Swiss Ambassador without permission. When law enforcement responded, the defendant's demeanor was much more

aggressive than during the previous encounter. The defendant did not comply with requests to depart the premises. Instead, the defendant instigated physical contact with both embassy personnel and law enforcement who endeavored to remove him from the premises. Multiple law enforcement officers had to physically restrain the defendant to stop him from progressing farther into the private residence and ultimately remove him from embassy property.

At the time of this arrest, law enforcement found paperwork with his belongings showing that Mandeville had recently applied for asylum at another embassy and was denied. Law enforcement also discovered over a thousand dollars in cash in the defendant's belongings.  The defendant has demonstrated efforts to seek asylum outside the United States, disregarded physical boundaries, refused to follow the commands of law enforcement, and possesses cash sufficient to fund travel. Accordingly, the defendant demonstrates a serious risk of flight. Additionally, the defendant has neither a fixed address nor any identified employment. Without an acceptable and verified location for the defendant to reside, the Court has no way of ensuring that the defendant will be present at future proceedings in this case.

### D.  Danger to the Community

Despite the defendant's limited criminal history, his recent actions demonstrate a disregard for the law and an inclination, on more than one occasion, to brazenly violate the sanctity of the home and workplace of a diplomat. The defendant scaled a fence, failed to heed the requests of embassy personnel, and physically engaged law enforcement in his efforts to remain and move farther inside the private property of the residence of the Swiss Ambassador. When the Ambassador himself attempted to prevent the defendant from moving farther inside, the defendant knocked away the Ambassador's arms and pushed the Ambassador.

If not for the rapid intervention by law enforcement, and actions taken by embassy personnel, the defendant could have further compromised the safety of the residence of the Swiss Ambassador, the embassy grounds, and the personnel who live and work there. While he was ultimately safely apprehended, the defendant's erratic behavior, along with noticeable mental health concerns, augment the danger he represents. This danger thus weighs in favor of pretrial detention.

## III.   <u>Conclusion</u>

For the reasons noted above, the government respectfully submits that clear and convincing evidence establishes that there are no conditions or combinations of conditions that will reasonably assure the safety of any other person and the community. The government also submits that a preponderance of the evidence establishes that the defendant is a serious risk of flight and no conditions or combinations of conditions will assure his appearance in Court. Accordingly, the government respectfully requests that the Court grant the government's motion to detain the defendant pending trial in this case.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By: _____
MARY A. FREEMAN
Wyoming Bar No. 7-5473
Special Assistant U.S. Attorney
Federal Major Crimes
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
Mary.Freeman@usdoj.gov
(202) 803-1628